NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0260n.06

Case No. 22-5828

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 07, 2023
DEBORAH S. HUNT, Clerk

|  |  |
|---|---|
| WORLD HERITAGE ANIMAL GENOMIC RESOURCES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| LUCINDA CHRISTIAN, | ) ) |
| Plaintiff-Appellant, | ) ) |
| v. | ) ) |
| LAURA WRIGHT, | ) ) |
| Defendant, | ) ) |
| GEICO INDEMNITY COMPANY, | ) ) |
| Defendant-Appellee. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: KETHLEDGE, STRANCH, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Lucinda Christian appeals the district court's grant of summary judgment to GEICO Indemnity Company on her common-law and statutory bad-faith claims. For the reasons set forth below, we affirm.

I.

On March 31, 2017, Lucinda Christian was involved in an automobile accident with Laura Wright. Wright caused the accident. At the time, Christian was driving a truck owned by World

Heritage Animal Genomic Resources, Inc. ("WHAGR"). Wright was driving a car owned by her grandparents. The Hartford insured Wright's vehicle for up to $100,000 per person for bodily injury liability. GEICO also personally insured Wright for up to $25,000 per person for bodily injury liability. Under the circumstances of this accident, Hartford served as the primary insurer and GEICO was the excess insurer.

In January 2018, Hartford settled with Christian and paid out its policy's maximum coverage of $100,000. Later that year, GEICO offered, and Christian accepted, a policy-limits payout from GEICO in the amount of $25,000.

In March 2019, Christian and WHAGR sued Wright and GEICO in Kentucky state court alleging common-law negligence and statutory negligence (against Wright), and statutory bad faith and common-law bad faith (against GEICO). Wright and GEICO removed the case to federal court. Christian and WHAGR voluntarily dismissed their claims against Wright. Thereafter, GEICO moved for summary judgment on Christian and WHAGR's bad-faith claims. The district court granted GEICO summary judgment, finding there were no genuine disputes of material fact because no reasonable jury could find that GEICO acted in bad faith in settling Christian's claim. Christian timely appealed. WHAGR did not appeal the adverse decision.

II.

We review a district court's grant of summary judgment de novo. *See Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This is a diversity case, and the parties agree that Kentucky substantive law applies. *See Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 673 n.2 (6th Cir. 1999) (observing that we

need not conduct a choice-of-law inquiry when there is no dispute on the applicable substantive law).

## III.

In Kentucky, insurers must act in good faith when determining whether they are obligated to pay claimants. *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021); *see also Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006) (opining that Kentucky law "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured or to another person bringing a claim under an insurance policy"). Kentucky recognizes four categories of bad-faith claims against insurers: (1) common-law third-party bad faith; (2) common-law first-party bad faith; (3) statutory bad faith under the Kentucky Consumer Protection Act; and (4) statutory bad faith under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), Ky. Rev. Stat. Ann. § 304.12-230. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526–27 (6th Cir. 2006) (citations omitted).

For all four categories of bad-faith claims, a plaintiff must satisfy three requirements:

> (1) the insurer must be obligated to pay the insured's claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Mosley*, 626 S.W.3d at 584 (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). If a claimant cannot prove these three elements, the bad-faith claim fails as a matter of law. *Id.* Plaintiffs seeking to recover on a bad-faith claim must satisfy "a tall burden of proof." *Hollaway v. Direct Gen. Ins. Co. of Miss., Inc.*, 497 S.W.3d 733, 737 (Ky. 2016). Relevant here, KUCSPA prohibits insurers from "[n]ot attempting in good faith to effectuate prompt, fair and equitable

settlements of claims in which liability has become reasonably clear." Ky. Rev. Stat. Ann. § 304.12-230(6).

Christian brings a common-law third-party bad-faith claim and a KUCSPA statutory bad-faith claim against GEICO. Specifically, Christian alleges GEICO acted in bad faith by falsely denying having received her medical records and other information related to her claim, thus acting fraudulently to obtain a more favorable settlement and delaying payment on her claim until November 2018.

The parties dispute the events that occurred in the months following the accident. Christian asserts that she sent her medical records by mail to GEICO in December 2017. Further, she claims to have mailed GEICO five letters beginning in December 2017 demanding that GEICO pay her the policy limits of $25,000 to address her damages from the accident. Also, Christian contends that Michelle Davis-Berry, the Hartford claims adjuster, either mailed or faxed an additional copy of her medical records to GEICO in December 2017 or January 2018 after settling Christian's claim for policy limits under the Hartford policy.

GEICO denies having received Christian's medical records before October 2018 or any of Christian's demand letters. Rather, GEICO contends that after Christian's attorney informed it in 2017 about the accident and that Hartford was the primary insurer, it received no further information about Christian's claim until August 2018. GEICO further asserts that after it received Christian's medical records in October 2018, it settled Christian's claim for policy limits in November 2018.

As a threshold matter, we will not consider Christian's demand letters as substantive evidence. Christian did not produce the demand letters during discovery. The demand letters were not produced in Christian's initial disclosures where she was obligated to disclose "all documents

. . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(ii). Christian also did not disclose the letters in response to interrogatories requesting each of the settlement demands Christian or her legal counsel made to GEICO. Instead, she produced them for the first time after discovery closed.

GEICO moved to exclude the letters, arguing that because the letters were not produced in discovery, they should not be admitted as evidence. In response to the motion to exclude the letters, Christian argued that she intentionally withheld the letters and only intended to use them for impeachment purposes. And impeachment evidence cannot be used "to support [the plaintiff's] case at the summary judgment stage." *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001). Thus, like the district court, we will not consider the demand letters as substantive evidence.

Because GEICO was the excess carrier, its obligation to pay Christian on her insurance claim arose, at the earliest, when Hartford paid out its policy limits to Christian in January 2018. For the sake of argument, we will assume that GEICO learned of Christian's settlement of her insurance claim with Hartford in January 2018 and that it received Christian's medical records around that same time. We will further assume that Christian can satisfy the first two elements of her bad-faith claims. Christian's claims still fail because she cannot, as a matter of law, meet her "tall burden" of proving the third element of her bad-faith claims—that GEICO "knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Mosley*, 626 S.W.3d at 584; *Hollaway*, 497 S.W.3d at 737.

To satisfy the third element of a bad-faith claim, a plaintiff must show "that the insurance company's conduct was outrageous and caused the plaintiff actual damage." *Mosley*, 626 S.W.3d at 588 (citing *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578, 592 (Ky. 2019)). "The

alleged conduct must go beyond negligence and justify the imposition of punitive damages." *Id.* (citing *Wittmer*, 864 S.W.2d at 890). "This means there must be sufficient evidence of intentional conduct or reckless disregard of the rights of an insured or claimant to warrant submitting the right to award punitive damages to the jury." *Wittmer*, 864 S.W.2d at 890. Plaintiffs who cannot produce evidence of "punitive conduct" cannot succeed on their bad-faith claim as a matter of law. *Hollaway*, 497 S.W.3d at 739. Further, it is settled law that "mere delay in settlement does not rise to bad-faith conduct." *Mosley*, 626 S.W.3d at 588–89 (citing *Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340 (Ky. 1986)).

There is no evidence in the record indicating that GEICO engaged in outrageous or punitive conduct. GEICO settled Christian's claim ten months after Christian settled with Hartford. And when GEICO made a settlement offer to Christian, it offered policy limits.

Christian argues that GEICO acted in bad faith by lying about not receiving her medical records and delaying paying her claim. Christian has not presented any evidence that GEICO's failure to respond to Christian after allegedly receiving her medical records in or about January 2018 was intentional or anything beyond mere negligence. *See Hollaway*, 497 S.W.3d at 739 (holding that where a claimant "fails to offer any proof of any intentional misconduct, instead suggesting that the [claim and settlement] process was a matter of interpretation, better fit for jury determination[,]" summary judgment is appropriate). She has also failed to present any evidence that GEICO's conduct was part of a scheme to deter her from pursuing her claim or that GEICO repeatedly requested unnecessary information. *See Rawe*, 462 F.3d at 533 (holding that where there were lengthy delays in addition to repeated requests for documentation that had previously been provided, the insurer's conduct could potentially amount to bad faith). And though, GEICO substantially delayed in settling Christian's claim, that delay alone is insufficient to establish bad

faith under Kentucky law. *See Mosley*, 626 S.W.3d at 588–89; *see also Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997) ("[M]ere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception.").

GEICO's conduct was not outrageous, nor does it merit punitive damages. Thus, even if GEICO received Christian's medical records in January 2018 and delayed settling the claim until November 2018, this conduct alone does not constitute bad faith. And Christian has failed to identify any acts of harassment or deception by GEICO. *See id.* The district court therefore did not err in granting summary judgment to GEICO.

IV.

For these reasons, we **AFFIRM** the district court's order granting GEICO's motion for summary judgment.